779 So.2d 178 (2000)
Ex parte KIMBERLY-CLARK CORPORATION.
(In re William C. Hallmark v. Scott Paper Company.)
1990075.
Supreme Court of Alabama.
September 8, 2000.
Richard W. Franklin, P. Vincent Gaddy, and Christopher B. Estes of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for petitioner.
Joseph M. Matranga, Mobile, for respondent.
Carl Robert Gottlieb, Jr., Mobile, for amicus curiae Municipal Workers Compensation Fund, Inc., and amicus curiae Alabama Nursing Home Ass'n Self-Insured Worker's Compensation Fund a/k/a Carecomp, in support of the petitioner.
John J. Coleman III, Gregory C. Cook, and Laura G. Black of Balch & Bingham, L.L.P., Birmingham, for amicus curiae Business Council of Alabama, in support of the petitioner.
Thomas T. Gallion III and Jamie A. Johnston of Haskell, Slaughter, Young & Gallion, L.L.C., Montgomery, for amicus curiae Goff NBA, Inc., in support of the petitioner's application for rehearing.
Terry A. Moore of Vickers, Riis, Murray & Curran, L.L.C., Mobile, for amicus curiae International Paper Company, in support of the petitioner's application for rehearing.
Charles F. Carr, Sarah Carlisle Pflaum, and Joseph H. Driver of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for amici curiae AAA Cooper Transportation, American Cast Iron Pipe Co., Drummond Co., Tyson Foods, Inc., Vulcan Materials Co., and Wal-Mart Stores, Inc., in support of the petitioner's application for rehearing.
Nancy Howell Lard of Janecky Newell, P.C., Birmingham, for amicus curiae Alabama Defense Lawyers Ass'n, in support of the petitioner's application for rehearing.
David M. Wilson of Janecky Newell P.C., Birmingham, for amicus curiae Associated General Contractors of America, Inc., Alabama Branch, Workers' Compensation Self-Insurers Fund, in support of the petitioner's application for rehearing.

On Application for Rehearing
LYONS, Justice.
The opinion of June 9, 2000, is withdrawn and the following is substituted therefor.
William Hallmark is a plaintiff in a workers'-compensation action pending in the Mobile Circuit Court. He had been employed by Scott Paper Company, now known as Kimberly-Clark Corporation. *179 Kimberly-Clark seeks a writ of prohibition directing Judge Edward B. McDermott not to reopen Hallmark's workers'-compensation case and to vacate his order of September 20, 1999, setting an evidentiary hearing on Hallmark's condition. For the reasons discussed below, we grant the petition and issue the writ.
Kimberly-Clark employed William Hallmark as a general mechanic. On August 17, 1990, a pipe ruptured in the Kimberly-Clark plant. Hallmark was in the plant at that time and was working within the line and scope of his employment. The rupture caused a caustic substance to splash on Hallmark. The caustic substance severely burned his skin and caused substantial injury to his eyes.
On July 22, 1991, Hallmark returned to work, after receiving temporary-total-disability-compensation payments for 47 weeks and six days. On August 17, 1992, Hallmark's treating physician, Dr. Richard Duffy, determined that Hallmark had reached maximum medical improvement. After reaching maximum medical improvement, Hallmark received compensation payments for 68 weeks of temporary partial disability. The trial court held a hearing on the question of Hallmark's disability and entered an order on August 9, 1993, awarding Hallmark workers'-compensation benefits. According to the trial court's order, Dr. Duffy found that Hallmark had suffered a 100% loss of use of his right eye and had suffered a permanent injury to his left eye, resulting in partial loss of vision. Dr. Duffy found a significant risk that Hallmark would develop complications in his left eye and a chance that Hallmark would become blind at some point.[1]
The trial court found that, as a result of the injuries he had suffered in the industrial accident, Hallmark had suffered a 20% loss of ability to earn, and it entered a judgment awarding him compensation for a 20% permanent partial disability. The court determined that Hallmark was entitled to the benefits for the period of permanent partial disability, not to exceed 300 weeks, minus the number of weeks for which Kimberly-Clark had already paid Hallmark temporary and permanent benefits. The court also ordered that all future medical benefits and all benefits for vocational rehabilitation remain open, as provided for by the Workers' Compensation Act. The trial court's order concluded:
"Given the clear potential for the condition of the Plaintiff to deteriorate and the fact the injuries of Plaintiff may ultimately result in permanent blindness, the Court hereby expressly retains jurisdiction over this matter and reserves the right to modify this Order."
Neither party sought review of the trial court's order. Specifically, Kimberly-Clark did not challenge, by petition for an extraordinary writ or otherwise, the portion of the trial court's order retaining jurisdiction over this case.
On July 15, 1999, Hallmark petitioned the trial court to modify its August 9, 1993, order and asked for permanent-total-disability benefits. Hallmark contended that the trial court had retained jurisdiction over the case and had reserved the right to modify the order because of the potential for Hallmark's condition to deteriorate. Hallmark alleged that he had become 100% unemployable because of the deterioration of his sight and his becoming permanently blind. He asked the trial court to hold an evidentiary hearing and to amend the award to conform to his present disability. He attached to the petition the report of Dr. Matthew W. Mosteller, which stated that Hallmark was 100% unemployable, that he could not see well enough to read comfortably, and that he would not be able to pass a driver's test.
*180 On August 26, 1999, Kimberly-Clark filed a response to Hallmark's petition, asking the trial court to deny it. Kimberly-Clark argued that there is no law under which Hallmark can petition the trial court to increase his disability rating.
On September 20, 1999, the trial court overruled Kimberly-Clark's objection to Hallmark's petition and set an evidentiary hearing for November 10, 1999. Kimberly-Clark then petitioned the Court of Civil Appeals for a writ of prohibition directing the trial court not to hold the November 10, 1999, hearing. The Court of Civil Appeals denied the petition, without opinion, on October 5, 1999. Ex parte Kimberly-Clark Corp. (No. 2981494), ___ So.2d ___ (Ala.Civ.App.1999) (table). Kimberly-Clark then petitioned this Court for a writ of prohibition. See Rule 21, Ala.R.App.P.
We must first determine the effect of the trial court's order of August 9, 1993. Kimberly-Clark contends that once the trial court has entered a judgment in a workers'-compensation case, it is conclusive and binding on the parties, subject to a party's right to appeal, citing § 25-5-81(a)(1), Ala.Code 1975 ("The decision of the judge hearing the same shall be conclusive and binding between the parties, subject to the right of appeal provided for in this article."). Based on that proposition, Kimberly-Clark then argues that the 1993 order was a final judgment from which Hallmark could have appealed, if he had desired to do so. Hallmark's failure to appeal, according to Kimberly-Clark, deprived the trial court of authority to reopen the August 9, 1993, order.
The workers'-compensation laws of this state were patterned after Minnesota's Workmen's Compensation Act. See, e.g., Reed v. Brunson, 527 So.2d 102 (Ala.1988). In its act, Minnesota provided a very limited right of reopening for change of the employee's condition after a settlement. See Minn. Gen.Stat.1913, §§ 8221, 8222. Our Legislature adopted virtually verbatim the reopening provision of the Minnesota act. See 1919 Ala. Acts, No. 245, p. 206, 225-26, § 24. In Davis v. Birmingham Trussville Iron Co., 223 Ala. 259, 135 So. 455 (1931), this Court limited the statutory right to reopen a workers'-compensation action to settlements between the parties and approved by the court.
Minnesota sanctioned reopening in adversary proceedings, Mason's Minn. St. § 4319 (1927), but our Legislature did not incorporate such a provision into our workers'-compensation statute. In language unique to Alabama, the original act provided that the decision of the judge hearing the claim would be conclusive, 1919 Ala. Acts, No. 245, p. 206, at 224-25, § 24, and that any "[s]ubsequent proceedings thereon shall only be for the recovery of moneys thereby determined to be due." 1919 Ala. Acts, No. 245, at pp. 227-28, § 28. A clear deviation from the Minnesota law requires this court to "assume some legislative purpose in such departure from the model act." Steele v. Aetna Cas. & Sur. Co., 46 Ala.App. 705, 709, 248 So.2d 745, 748 (1971).
In the years since this Court decided Tombrello Coal Co. v. Fortenberry, 248 Ala. 640, 29 So.2d 125 (1947), the Legislature has revisited the matter of finality in workers'-compensation awards. See Ala. Acts 1975, 4th Ex.Sess., No. 86, p. 2729; Ala. Acts 1984, Act No. 85-41, p. 44. On each occasion, the Legislature has carried over the language from the original statute, making compensation awards final and limiting subsequent proceedings to recovery of money determined in the original order to be due. See §§ 25-5-81(a)(1) and 25-5-88, Ala.Code 1975.
In 1975, the Legislature amended § 24 of the original act to eliminate the power of the court unilaterally to modify settlements based on the postjudgment change of an employee's condition, so that now a settlement may be modified only by agreement of the parties, with court approval. See § 25-5-84, Ala.Code 1975. At that time, the Legislature enacted a new provision allowing reopening of permanent-total-disability *181 cases. See § 25-5-57(a)(4)b., Ala.Code 1975. This statute applies only when the employer petitions the trial court to reduce an award of permanent-total-disability benefits.
On original submission, Kimberly-Clark called our attention to only two cases dealing with an order in a workers'-compensation case in which a trial court used language purporting to retain jurisdiction: Ex parte Johnston, 231 Ala. 458, 165 So. 108 (1935), and Ex parte DCH Regional Medical Center, 571 So.2d 1162 (Ala.Civ. App.1990). In Ex parte Johnston, the trial court entered an order finding a temporary total disability and providing for payments for 300 weeks unless the disability terminated sooner, in which event compensation would then cease. The trial court's order contained a statement retaining the cause on the docket "for such further and necessary orders as may be mete and proper in the premises." 231 Ala. at 459, 165 So. at 109. More than 18 months after the rendition of the judgment, the employer filed in the trial court a motion alleging that he had paid in accordance with the earlier judgment and had been advised that the disability of the plaintiff had terminated; he argued that he should not be called upon to make further payments under the judgment. This Court granted certiorari review and set aside the trial court's order, in which it had modified its previous order finding a total disability and had substituted for it an order stating that the plaintiff suffered from only a permanent partial disability. This Court found that the retention of the cause on the docket conflicted with the precursors of §§ 25-5-81(a)(1) and 25-5-88, Ala.Code 1975 (stating that subsequent proceedings shall be only for the recovery of moneys determined by the earlier judgment to be due).
This Court stated in Johnston that the trial court was without authority to reexamine the facts and to redetermine the character of the plaintiff's injuries and the degree of his disability, based upon the rule that the findings of the original judgment as to the extent and nature of the injuries were conclusive. 231 Ala. at 459, 165 So. at 109. The Court noted that, if the employer had been dissatisfied with the conclusion that the employee had suffered a temporary total disability of 300 weeks' duration, he should have appealed in order to have the judgment reversed or corrected.
On application for rehearing, Kimberly-Clark calls our attention for the first time to Tombrello Coal Co., supra, which deals conclusively with the troublesome aspect of the proceeding before us-the failure of the employer to challenge by appeal or otherwise the trial court's express determination that it reserved jurisdiction because of the clear potential for deterioration of the plaintiff's condition. In Tombrello, the trial court's order provided:
"[S]hould plaintiff's disability be determined in the future by the court or the parties to be less than total disability, then said compensation shall be decreased in proportion to said decrease of disability; [and] plaintiff shall submit to examination by defendant's doctor at any reasonable time and place requested...."
248 Ala. at 641, 29 So.2d at 126. Speaking to the effect of this order, this Court stated:
"By the original judgment the court not only awarded compensation which had accrued to the date of its rendition, but, also, awarded the plaintiff further compensation at the same rate and for the period permitted by the compensation law so long as his total disability continued. Under our decisions the provision as to the matter of continuance of the disability and the reopening of the hearings upon that question was unauthorized by our statute."
248 Ala. at 642, 29 So.2d at 127 (emphasis added).
This Court then wrote, with reference to the Johnston case:

*182 "In the Johnston case there was a like provision for re-examination of the question as to the continuance of the disability. There the defendant, also, sought to show that the disability had terminated. The trial court upon a hearing determined that in fact the motion was well taken and granted defendant relief. The conclusion of the court may be found in the following excerpts from the opinion: `From the foregoing statement, it appears that the circuit court, more than 18 months after the rendition of its final decree, on motion of the defendant, undertook to re-examine the facts and redetermine the character of plaintiffs injuries and the degree of his disability. This, the circuit court was without authority to do; the findings of the original judgment as to the extent and nature of the injuries were conclusive.' It was further pointed out in that opinion that if the employer was of the opinion that the conclusion of the court on the first hearing was erroneous, he should have persisted in his appeal to have the judgment reversed or corrected.
"In the instant case defendant prosecuted no appeal, but rested content upon the original judgment of the court.
"The effect of these decisions is that the condition in the original judgment, as well as in the amended judgment, for re-examination as to the extent and nature of the employe's injuries, was ineffective, and is to be so treated on collateral attack. This unauthorized condition, therefore, of the original judgment was subject to be corrected on review in this court, but does not affect the conclusive character of the original judgment as carried forward in the amendment awarding compensation upon the basis of total disability."
248 Ala. at 643, 29 So.2d at 127 (emphasis added).
The case now before us is different from Johnston and Tombrello in that it presents a judgment left open for the benefit of the employee, as opposed to the employer. It is now the employee, not the employer, who is the victim of language in an order purporting to protect the future rights of the employee; we cannot reach, in order to protect the employee, a result we rejected when the language at issue had purported to protect the employer. It is for the Legislature, and not this Court, to create a remedy for reopening a judgment at the behest of the employee, as it has done for the employer through § 25-5-57(a)(4)b.
APPLICATION GRANTED; OPINION OF JUNE 9, 2000, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, BROWN, and ENGLAND, JJ., concur.
JOHNSTONE, J., dissents.
JOHNSTONE, Justice (dissenting).
I respectfully dissent from granting the application for rehearing and granting the petition for a writ of prohibition. The case before us is distinguishable from Ex parte Johnston, 231 Ala. 458, 165 So. 108 (1935), and Tombrello Coal Co. v. Fortenberry, 248 Ala. 640, 29 So.2d 125 (1947), cited by the majority. The distinguishing feature of the case now before us is the language in Judge McDermott's order that, "the Court hereby expressly retains jurisdiction over this matter and reserves the right to modify this Order." Neither the trial court order in Johnston nor the trial court order in Tombrello uses the word "jurisdiction" and thereby puts the parties on notice that the order includes an express decision on the issue of jurisdiction.
Judge McDermott's order containing his decision on the issue of jurisdiction was either a final order a mere interlocutory order. If it was a final order, then the failure of Kimberly-Clark to appeal it allowed Judge McDermott's jurisdictional decision to become the law of the case, binding on the parties whether right or wrong. If, on the other hand, Judge *183 McDermott's express retention of jurisdiction rendered his order merely interlocutory, he may reassess the employee's disability because the case is still pending before him. Rule 54(b), Ala.R.Civ.P.
NOTES
[1] The trial court also heard testimony from Dr. Arnold Luterman, who testified that he had treated Hallmark for the second- and third-degree burns he received in the accident. Dr. Luterman opined that Hallmark had suffered a 5% whole-body permanent impairment as a result of his burns.